# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| THE ESTATE OF GEROME | : | |
| SMITH, and VIRGINIA SMITH, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | No. 3:15-CV-112 (CAR) |
| FRANKLIN COUNTY, | : | |
| Sheriff STEVIE THOMAS, | : | |
| and Officer ANGELA LEE PARKER, | : | |
| | : | |
| Defendants.[1] | : | |
| | : | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs the Estate of Gerome Smith, and Virginia Smith bring deliberate indifference claims pursuant to 42 U.S.C. § 1983 and § 1988, as well as Georgia state law tort claims, against Defendants Sheriff Stevie Thomas and Detention Officer Angela Lee Parker. Plaintiffs contend Defendants violated decedent Gerome Smith's constitutional rights by providing grossly inadequate and/or delayed medical care in response to his serious medical needs. Currently before the Court is Defendants' Motion for Summary

---

[1] Plaintiffs' Response to Defendants' Motion for Summary Judgment withdraws Plaintiffs' claims against Franklin County and Sheriff Thomas in his official capacity. Plaintiff does not mention withdrawal of the John Does 2-5 originally named as defendants. However, despite a full discovery period, Plaintiffs have neither identified nor served the unknown defendants, and the Court hereby finds that any claims against the unknown defendants are due to be DISMISSED without prejudice. *See* Fed. R. Civ. P. 4(m); *see also James v. Mazda Motor Corp.*, 222 F.3d 1323, 1324 n.6 (11th Cir.2000).

Judgment [Doc. 24]. After careful consideration, the Court finds no genuine issues of material fact exist as to Defendants' liability, and Defendants are entitled to summary judgment. Thus, Defendants' Motion [Doc. 24] is **GRANTED**.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[3] Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could differ as to the verdict.[4] When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion.[5]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[4] *See id.* at 249-52.
[5] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

material fact" and that entitle it to a judgment as a matter of law.[6]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[7]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[8]

## BACKGROUND

For purposes of this Motion, the material facts in the light most favorable to Plaintiff, the nonmovant, are as follows:

On November 14, 2013, Gerome Smith ("Smith") was arrested by City of Royston police officers on an outstanding probation violation warrant and for driving without a license.[9] Smith was taken to the Franklin County Detention Center ("Jail") where he was screened and booked.[10] The medical screening form included with the arrest/booking report indicated Smith informed the staff he suffered from a lung injury, asthma, and high blood pressure.[11]  When Natalie Coon, a nurse at the Jail, screened Smith the next day she noted on the Inmate Custody Report that Smith had previously been prescribed

---

[6] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).
[7] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.
[8] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).
[9] Pl.'s Resp. to Defs.' Joint. Stmt. of Mat. Facts, [Doc. 32-1] at para. 1.
[10] *Id.* at para. 4.
[11] *Id.*; Arrest and Booking Rep., Ex. A, [Doc. 24-1] at p. 3.

a blood pressure medication, Lisinopril, but he had not been able to afford the medication in over a year.[12] Nurse Coon noted on Smith's records that he would be provided this medication once it was approved by the presiding physician.[13] She also noted that he could receive an Albuterol nebulizer breathing treatment for breathing difficulties and Clonidine for high blood pressure, both per the Jail's medical protocols.[14] Additionally, she added Smith to the doctor call list for November 21, 2013.[15] Jail records show that Smith received Lisinopril on the morning of November 16, 2013, the day after Nurse Coon evaluated him.[16]

On November 17, 2013, at approximately 1:10 a.m., Detention Officer Orsley called Defendant Detention Officer Angela Parker ("Parker") to B-Pod to check on Smith. Smith appeared to be having physical difficulties because he was standing at the window to the pod and holding his chest.[17] Parker had worked as a detention officer for the Franklin County Sheriff's Office for several years. Prior to working for the Sheriff's

---

[12] Pl.'s Resp. to Defs.' Joint Stmt. of Mat. Facts, [Doc. 32-1] at para. 5; Inmate Custody Rep., Ex. B, [Doc. 24-2] at p. 1.
[13] [Doc. 32-1] at para. 5.
[14] [Doc. 32-1] at paras. 6-7; [Doc. 24-2] at p. 1.
[15] [Doc. 32-1] at para. 7.
[16] [Doc. 32-1] at para. 9; [Doc. 24-2] at p. 1.
[17] [Doc. 32-1] at paras. 12-13; Def. Angela Parker's Dep., [Doc. 32-2] at p. 30-31.

Office, Parker worked as a licensed practical nurse for approximately eight years.[18] She was not working as a nurse at the time of her interactions with Smith.[19] This was the first contact Parker had with Smith.[20]

Smith told Parker that he had a sore throat and was having trouble breathing.[21] Parker testified she could hear Smith wheezing as he breathed, and when she took his blood pressure it was elevated at 190/118.[22] Smith was taken to the Jail's medical area, and Parker checked the Jail records for Smith's medical information.[23] Smith's medical records indicated he had breathing issues, asthma, and hypertension (high blood pressure); he had been given his blood pressure medicine; and that the nurse had authorized an Albuterol nebulizer breathing treatment and Clonidine for high blood pressure, both per Jail protocol.[24] Parker noted that Smith's pulse was within normal limits, and his oxygen level was at 94%.[25]

Based on her observations and the information in his file, Parker gave Smith a breathing treatment, two ibuprofen for his sore throat, a Claritin tablet for sinus

---

[18] [Doc. 32-1] at para. 11.
[19] Def. Angela Parker's Dep., [Doc. 32-2] at p. 17.
[20] [Doc. 32-1] at para. 13.
[21] [Doc. 32-1] at para. 14.
[22] *Id.*; Def. Angela Parker's Dep., [Doc. 32-2] at p. 31.
[23] [Doc. 32-1] at para. 15.
[24] [Doc. 32-1] at para. 16.
[25] [Doc. 24-8] at para. 17.

drainage, and .1 mg of Clonidine for his high blood pressure, per the Jail protocol and the nurse's notes.[26] Parker did not examine Smith's throat.[27] After administering this medication, Smith told Parker he could breathe more easily, and Parker checked Smith's oxygen level, which had improved to 99%.[28] After approximately 20 minutes in the medical area, Smith was escorted back to B-Pod.[29] Parker did not contact Nurse Natalie Coon.[30] Jail protocol for Clonidine states, "Clonidine is to be administered and given one hour to work. Recheck pressure if no improvement."[31] Parker did not re-check Smith's blood pressure.[32]

Approximately four hours later, at 5:30 a.m., Parker observed Smith sitting at a table in B-Pod, appearing as if he did not feel well.[33] At 5:55 a.m., Parker entered the pod to check on Smith, who—although he could not speak due to his tongue being severely swollen—pointed to his throat and responded to questions by nodding or shaking his head.[34] Parker radioed for Sergeant Wanda Fountain to call 911.[35] Because

---

[26] [Doc. 32-1] at para. 18.
[27] Def. Angela Parker's Dep., [Doc. 32-2] at p. 65.
[28] [Doc. 32-1] at para. 19.
[29] *Id*.
[30] Def. Angela Parker's Dep., [Doc. 32-2] at p. 47-48.
[31] Def. Stevie Thomas' Dep., [Doc. 32-3] at p. 100.
[32] Def. Angela Parker's Dep., [Doc. 32-2] at p. 111.
[33] [Doc. 32-1] at para. 21.
[34] Def. Angela Parker's Dep., [Doc. 32-2] at p. 64, 100.

of Smith's swollen tongue, Parker thought Smith was likely having an allergic reaction, so she crushed two Benadryl tablets into water. However, Smith was unable to swallow them.[36] Parker took Smith to the booking area in a wheelchair, where she then checked his oxygen level which was at 100% room air.[37] At 6:10 a.m., the EMS crew arrived and took Smith to the hospital.[38] EMS performed CPR on Smith on the way to the hospital, but they were unable to revive him, and he died.[39] In addition to "severe hypertensive and atherosclerotic heart disease, which contributed to his death significantly," the autopsy report states there was a "probable adverse reaction to Lisinopril."[40]

## DISCUSSION

Based on these events, Plaintiffs bring § 1983 claims against Defendants Parker and Sheriff Thomas for deliberate indifference to Smith's serious medical needs, as well as Georgia state law tort claims. It is uncontested that Sheriff Thomas had no interactions with Smith, nor was he aware of the facts surrounding Smith's incarceration or care.[41] Officials cannot be held liable under § 1983 "on the basis of

---

[35] [Doc. 32-1] at para. 22.
[36] [Doc. 32-1] at para. 24.
[37] [Doc. 32-1] at para. 23, 25.
[38] [Doc. 32-1] at para. 26.
[39] Def. Angela Parker's Dep., [Doc. 32-2] at p. 73.
[40] Franklin County Coroner, Autopsy of Gerome Smith, Ex. E, [Doc. 24-5] at p. 3.
[41] [Doc. 32-1] at para. 35.

respondeat superior or vicarious liability."[42] Plaintiff's claims against Sheriff Thomas are supervisory liability claims predicated on Plaintiffs' allegations that Franklin County had a policy or practice of providing inadequate care to inmates, that this practice of inadequate care was known and ratified by Sheriff Thomas, and enabled by his failure to train, properly discipline, and take adequate precautions in hiring employees.[43]

Defendants seek summary judgment on all of Plaintiffs' claims arguing that Defendants did not violate Smith's constitutional rights. However, if the Court finds Defendants did violate Smith's constitutional rights, Defendants argue they are entitled to qualified immunity for the claims against them in their individual capacities, and sovereign immunity under the Eleventh Amendment for the claims against them in their official capacities. Additionally, Defendants argue they are entitled to official immunity on the state law claims. The foundational issue the Court must determine is whether Defendants violated Smith's constitutional rights by being deliberately indifferent to his serious medical needs.

## I.  Deliberate Indifference to Serious Medical Needs

Because Smith was a pretrial detainee at the time of the alleged violations, his claims are governed by the Due Process Clause of the Fourteenth Amendment which

---

[42] *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994)).
[43] Plaintiff's First Amended Complaint, [Doc. 9] at paras. 17-19.

guarantees him the "right to receive medical treatment of illness and injuries."[44] However, the standard for deliberate indifference claims brought by pretrial detainees under the Fourteenth Amendment is the same as the Eighth Amendment standard applicable to prisoners.[45]

"It is well settled that the deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment."[46] "[N]ot every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."[47] "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a Constitutional violation merely because the victim is a prisoner."[48]  "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment."[49]

---

[44] *McBride v. Houston Cty Health Care Authority*, 658 F. App'x 991, 996 (11th Cir. 2016) (quoting *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015)).

[45] *McBride*, 658 F. App'x at 996 n.5.

[46] *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (quoting *Estelle v. Gamble, 429 U.S. 97, 104 (1976)* (internal quotation marks omitted).

[47] *McElligott*, 182 F.3d at 1254 (quoting *Estelle*, 429 U.S. at 105) (internal quotation marks omitted).

[48] *Id*.

[49] *Id*.

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry."[50] "First, the plaintiff must prove an objectively serious medical need," and second, "the plaintiff must prove that the prison officials acted with deliberate indifference to that need."[51]

"A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"[52] "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition."[53] In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm."[54]

To establish deliberate indifference to the serious medical need the plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence."[55] "[A] simple disagreement over a diagnosis or course of treatment does not constitute deliberate indifference. As long as

[50] *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted).
[51] *Id.*
[52] *Id.*
[53] *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (internal citation and quotations omitted).
[54] *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted).
[55] *Brown*, 387 F.3d at 1351 (citing *McElligott*, 182 F.3d at 1255)).

the medical treatment provided is 'minimally adequate,' a prisoner's preference for a different treatment does not give rise to a constitutional claim."[56]

### i. Objectively Serious Medical Need

Defendants argue no evidence establishes Smith had an objectively serious medical need when Defendant Parker first interacted with him at 1:10 a.m. on November 17, 2013. Plaintiffs counter that Smith's breathing difficulties and elevated blood pressure presented an objectively serious medical need. Additionally, Plaintiffs argue that Smith's clutching his chest is evidence he was experiencing chest pains, which by itself may qualify as an objectively serious need. The Court agrees Smith had an objectively serious medical need.

As stated above, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention,"[57] and must be "one that, if left unattended, pos[es] a substantial risk of serious harm."[58] The high blood pressure and breathing difficulties Smith suffered in the early morning of November 17, 2013, were symptoms of Smith's hypertension and asthma that were documented in Jail records and had been diagnosed by a physician as mandating treatment. Both

---

[56] *Chatham v. Adcock*, 334 F. App'x 281, 288 (11th Cir. 2009) (per curiam) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1504-5 (11th Cir. 1991); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995)).

[57] *Farrow v. West*, 320 F.3d at 1243 (internal quotation marks omitted).

[58] *Id.*

conditions posed substantial risk of serious harm if left unattended. Therefore, Smith had an objectively serious medical need.[59]

## ii. Deliberate Indifference

Defendants next argue Plaintiffs cannot show Defendant Parker was subjectively aware of Smith's serious medical need beyond what was "already anticipated in his records, or that [Smith] faced a risk of serious harm if more care was not provided."[60] However, the record contains evidence Parker was subjectively aware of Smith's serious medical need and the attendant risk of serious harm, at least when she interacted with him at 1:10 a.m. on November 17, 2013. Parker testified she could hear Smith wheezing when she spoke with him, and when she took his blood pressure it was elevated.[61] Additionally, Parker checked Smith's Jail records which informed her Smith had been diagnosed with hypertension and asthma, and he had been having trouble breathing. Parker was aware of Smith's symptoms and his diagnoses. Thus, a

---

[59] *See Hunt v. Uphoff*, 199 F.3d 1220, 1222 (10th Cir. 1999) (finding that prisoner who claimed serious medical needs of diabetes and hypertension had sufficiently pleaded facts to allege deliberate indifference); *Garza v. Harris Cty., Texas*, No. CIV.A. H-09-4058, 2011 WL 3925020, at *13 (S.D. Tex. Sept. 7, 2011) ("[Inmate]'s hypertension, especially in light of his long history with it, including a previous stroke, was a serious, indeed life-threatening condition. . . ."); *Jackson v. Pollion*, 733 F.3d 786, 789 (7th Cir. 2013) ("Hypertension is a serious condition. Untreated it can result in strokes or heart attacks."); *Harrison v. Ash*, 539 F.3d 510, 518–19 (6th Cir. 2008) ("[T]he parties do not dispute the fact that asthma satisfies the "objective" requirement of Harrison's deliberate indifference claim. Indeed, the symptoms associated with an asthma attack—wheezing, difficulty breathing, tightness in the chest—are quite obvious and recognizable even to a lay person.").
[60] Def. Parker's Brief in Support of her Motion for Summary Judgment, [Doc. 24-6] at p. 8.
[61] Def. Angela Parker's Dep., [Doc. 32-2] at p. 31-35.

reasonably jury could find Parker was subjectively aware of a risk of serious harm to Smith.

However, to show deliberate indifference to a serious medical need, Plaintiffs must show Parker disregarded a risk of serious harm by conduct that is more than mere negligence. Conduct that is more than mere negligence includes: "(1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment for non-medical reasons; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all."[62]

Plaintiffs argue Parker was deliberately indifferent to Smith's serious medical needs by both providing grossly inadequate care and by delaying treatment. Plaintiffs argue Smith's symptoms constituted a medical emergency that required Parker to contact medical personnel, but she did not.[63] In addition, Plaintiffs point to Jail protocol which required Parker to recheck Smith's blood pressure after an hour, which she did not do. Finally, Plaintiffs contend Parker's failure to ascertain whether Smith might have an adverse reaction to the Clonidine or the Albuterol, and failure to check on or observe Smith for five hours show deliberate indifference. Plaintiffs argue Parker did

---

[62] *Magwood v. Sec'y, Fla. Dep't of Corr.*, 652 F. App'x 841, 844 (11th Cir. 2016) (per curiam) (citing *McElligott*, 182 F.3d at 1255).

[63] Def. Stevie Thomas' Dep., [Doc. 32-3] at p. 41; Report of Tim Gravette, [Doc. 32-4] at p. 3.

the "bare minimum," and a reasonable jury could determine Parker was deliberately

indifferent to Smith's medical needs.

The Court disagrees. The Eleventh Circuit has held that "medical treatment rises

to the level of a constitutional violation only when it is 'so grossly incompetent,

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental

fairness.'"[64] Parker's conduct fails to meet this standard.[65] None of the deficiencies

Plaintiffs list create an issue of fact on whether Parker's actions went beyond

negligence. Parker testified that she did not think Smith's situation constituted a

medical emergency, nor did she think it necessary to call Nurse Coon because Jail

protocols existed for treating the symptoms Smith exhibited.[66] Parker attempted to

address Smith's needs known to her at the times she interacted with him. Parker gave

Smith a nebulizer breathing treatment, and his breathing improved. Parker gave Smith

the Jail protocol's pre-approved prescription medication for high blood pressure in an

---

[64] *Kruse v. Williams*, 592 F. App'x 848, 858 (11th Cir. 2014) (quoting *Harris v. Thigpen*, 941 F.2d at 1505).
[65] *See e.g. McElligott v. Foley*, 182 F.3d at 1254 (finding genuine issue of material fact as to deliberate indifference where inmate suffered from severe stomach pain and weight loss for months only to be given Pepto-Bismol, gas and ulcer medication, and even after possible diagnosis of cancer was not hospitalized, given IV fluids, or placed on medical watch); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 702 (11th Cir. 1985) (finding sufficient allegations of deliberate indifference when officials knew pre-trial detainee was suffering from serious medical problems, but only provided Bengay and Tylenol, and refused to allow him specialized treatment without a court order; he was eventually diagnosed with leukemia); *Harris v. Thigpen*, 941 F.2d 1495, 1506 (11th Cir.1991) (finding no evidence of deliberate indifference in the treatment of HIV positive inmates, finding that "the cases at most evidence isolated incidences of medical malpractice.").
[66] Def. Angela Parker's Dep., [Doc. 32-2] at p. 48-49.

attempt to treat Smith's high blood pressure.[67] Additionally, Parker tried to alleviate

Smith's discomfort from his sore throat by providing him over-the-counter medications

of ibuprofen and Claritin, in case it was "a cold, sinus-cold type thing causing his sore

throat."[68] When Smith left the medical area, Parker had attempted to treat all the

symptoms Smith exhibited.[69] Parker's treatment of Smith was not so grossly inadequate

as to rise to the level of a constitutional violation.[70] "'[I]t is obduracy and wantonness,

not inadvertence or error in good faith,' that violates the Eighth Amendment in

'supplying medical needs.'"[71]

Plaintiffs argue the facts that Parker neither re-checked Smith's blood pressure

after treating him, nor checked his condition throughout the night shows grossly

inadequate or delayed treatment.  At most, however, Parker's failure to recheck Smith's

blood pressure amounts to negligence. Plaintiffs cite *Goebert v. Lee County* arguing

Parker's failure to check on Smith during the night was an unconstitutional delay of

---

[67] No evidence in the record indicates the seriousness or severity of a high a blood pressure reading of 190/118.

[68] Def. Angela Parker's Dep., [Doc. 32-2] at p. 45-46.

[69] Pl.'s Resp. to Defs.' Joint Stmt. of Mat. Facts, [Doc. 32-1] at para. 19.

[70] *See Carswell v. Bay County*, 854 F.2d 454 (11th Cir. 1988) (reversing grant of summary judgment on deliberate indifferent claims as to several defendants, finding defendants knew prisoner had serious medical need as he was losing significant weight, but for eleven weeks only provided him with medication for constipation, tonsillitis, and a skin rash; when inmate was finally hospitalized, having lost approximately 53 pounds, he was diagnosed as a diabetic and was hospitalized for two months). *See also Carter v. Broward Cty. Sheriff Office*, No. 16-11649, 2017 WL 4387150, at *1 (11th Cir. Oct. 3, 2017) (vacating *sua sponte* dismissal of inmate's deliberate indifference claims, finding sufficient inmate's allegations that he had been diagnosed by the jail doctor as having suffered a slight heart attack, yet for months either received his blood pressure medication late or not at all).

[71] *Adams v. Poag*, 61 F.3d at 1543 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

treatment, and "[a] party that willfully blinds itself to a fact. . . can be charged with constructive knowledge of that fact."[72] However, the facts of *Goebert* are easily distinguishable from the facts here. In *Goebert*, the plaintiff, a pregnant inmate, suffered a stillbirth and subsequently brought a deliberate indifference claim against a jail official who failed to investigate her complaint that she had been leaking amniotic fluid for ten days, and the jail doctor had determined she needed to see an outside specialist.[73] The Eleventh Circuit found the official had a duty to look into her complaint; and his failure to do so because he did not believe her was deliberately indifferent to the inmate's serious medical need, and the one-day delay caused by his indifference could have contributed to the inmate's stillbirth. [74]

Here, in contrast, as soon as Parker was aware of Smith's request for medical attention at 1:10 a.m., she attended to him and attempted to treat all of the symptoms of which he complained. She neither disbelieved that Smith was suffering from medical issues, ignored any of his complaints, nor failed to act. No evidence shows Smith indicated he needed additional medical treatment after Parker returned Smith to his pod.

---

[72] *Goebert v. Lee Cty.,* 510 F.3d 1312, 1328 (11th Cir. 2007) (citing *United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 902 (11th Cir.2003)).
[73] *Goebert,* 510 F.3d at 1325-27.
[74] *Id.* at 1327-29.

At 5:30 a.m., when Parker noticed Smith might need additional medical treatment, no evidence in the record shows Parker was subjectively aware Smith faced any risk of serious harm beyond that of the medical issues for which she had already treated him. The prescription medication Parker provided Smith had been pre-approved by Jail medical staff; Smith had previously been prescribed the Lisinopril by an outside doctor; and Jail records listed Smith's only allergy as penicillin.[75] "[A]n official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay."[76] Although, Parker did not evaluate Smith until approximately 5:55 a.m., 25 minutes after first noticing his symptoms, no evidence shows Parker intentionally delayed treatment knowing Smith had a life-threatening condition. This delay does not rise to the level of a constitutional violation as illustrated by Eleventh Circuit case law.[77]

Plaintiffs argue Parker was only unaware of Smith's deteriorating condition because she failed to check on him. Parker's failure to check on Smith, however amounted to at most negligence. The record shows that at 5:30 a.m. Parker was unaware of any additional risk of harm to Smith. "Proof that the defendant should have

---

[75] Inmate Custody Rep., Ex. B, [Doc. 24-2] at p. 1; Arrest and Booking Rep., Ex. A, [Doc. 24-1] at p. 3.
[76] *Goebert*, 510 F.3d at 1330 (citing *Lancaster v. Monroe County, Alabama*, 116 F.3d 1419, 1425 (11th Cir.1997)).
[77] *See* cases cited *supra* note 62 and note 67.

perceived the risk, but did not, is insufficient [to show deliberate indifference]."[78] Once

Parker became aware of Smith's medical emergency she called 911.

The facts in this case are comparable to the facts in *Kruse v. Williams*, in which the

Eleventh Circuit affirmed summary judgment for a jail nurse on a deliberate

indifference claim despite the death of the inmate.[79] In *Kruse*, the decedent inmate had

Addison's disease, a serious medical condition of which the defendant nurse was

aware.[80] The plaintiff in *Kruse* argued the defendant nurse provided grossly inadequate

treatment by failing to send the inmate to the hospital, and therefore she was

deliberately indifferent to his serious medical needs.[81] The nurse had given the inmate

medication and clear liquids as per the doctor's order, and she checked on him several

times after treating him, either personally, or by asking the detention officers to look in

on him and apprise her of his condition.[82] The last time the nurse checked on the inmate

was 9:45 p.m. after which she reported there were "[n]o further complaints of [nausea

and vomiting] voiced."[83] At 1:30 a.m. the next morning the inmate was pronounced

dead.[84]

---

[78] *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir.1999).
[79] *Kruse v. Williams,* 592 F. App'x at 849.
[80] *Id.* at 849-50.
[81] *Id.* at 854, 858.
[82] *Id.* at 858.
[83] *Id.* at 851.
[84] *Id.*

Here, Parker did not think the situation was a medical emergency; she attempted to treat Smith with pre-approved medical protocol, and evidence shows detention officers were able to keep an eye on Smith throughout the night.[85] Like the nurse in *Kruse*, Parker treated Smith and had received no more complaints; that Smith died, while tragic, does not make her actions "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."[86]

Because the Court finds no violation of Smith's constitutional rights, there is no need to address Plaintiffs' claims against Sheriff Thomas,[87] or for punitive damages, or Defendants' arguments that Plaintiffs' claims are time-barred.

## II. State Law Claims

---

[85] Def. Stevie Thomas' Dep., [Doc. 32-3] at p. 103-04.

[86] *Id. at* 858.

[87] As mentioned above, Plaintiffs' claims against Defendant Thomas are based on a supervisory liability theory for which Plaintiffs would need to show either the supervisor personally participated in the alleged constitutional violation, or there is a causal connection between the supervising official's actions and the alleged constitutional deprivation. *See Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Regardless, there must be a constitutional violation for liability to attach. *See id.* Additionally, although Plaintiffs voluntarily dismissed their official capacity claims against Defendant Thomas, they did not dismiss the official capacity claims against Defendant Parker. A claim against an official in his or her official capacity is generally a suit against the entity the official represents. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The Court need not decide here whether the Franklin County Sheriff's Department is an arm of the state or an entity of the county, since the Court has determined no constitutional violation has taken place. If the Sheriff's Department is an arm of the state, it is entitled to sovereign immunity under the Eleventh Amendment, s*ee Palmer v. Correct Care Sols., LLC*, No. 4:17-CV-102 (CDL), 2017 WL 6028467, at *1 (M.D. Ga. Dec. 5, 2017), and if the Sheriff's Department is part of the county, no liability can attach without a constitutional violation. In order "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989).

Having granted summary judgment on Plaintiffs' federal claims, the Court must now determine whether it should exercise supplemental jurisdiction over the remaining state law claims.[88]  The Court may decline to exercise supplemental jurisdiction over non-diverse state law claims if:

(1) The claim raises a novel or complex issue of State law,

(2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) The district court has dismissed all claims over which it has original jurisdiction, or

(4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.[89]

Additionally, in deciding whether or not to exercise supplemental jurisdiction over pendent state law claims under § 1367(c), a court should also consider the interests of judicial economy, convenience,  and fairness to the litigants.[90]

Here, summary judgment is due to be granted as to all of the federal claims over which this Court has original jurisdiction.  "When the district court has dismissed all

---

[88] *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

[89] 28 U.S.C. § 1367(c).

[90] *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994).

federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims."[91]  The Eleventh Circuit has repeatedly stated that "[s]tate courts, not federal courts, should be the final arbiters of state law."[92] Having fully considered the matter, the Court concludes that Plaintiffs' state law claims should be determined by the Georgia courts.  Thus, the Court finds it appropriate to decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c).

## CONCLUSION

Based on the foregoing, Defendants' Motions for Summary Judgment [Doc. 24] is **GRANTED** as to Plaintiffs' federal claims.[93] The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, and thus, those claims are hereby **DISMISSED without prejudice** to the parties litigating them in state court.

Plaintiffs' Motion for Hearing [Doc. 31] is hereby **DENIED** as moot.

---

[91] *Arnold v. Tuskegee Univ.*, 212 F. App'x 803, 811 (11th Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

[92] *See, e.g., Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

[93] Additionally, the Court finds that any claims against the unknown defendants are due to be DISMISSED, without prejudice. *See* Fed. R. Civ. P. 4(m); *see also James v. Mazda Motor Corp.*, 222 F.3d 1323, 1324 n.6 (11th Cir. 2000).

**SO ORDERED,** this 1st day of March, 2018.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT